NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EVELYN M. STEPHENS,**
*Petitioner,*

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent.*

---

2013-3049

---

Petition for review of the Merit Systems Protection Board in No. PH0831120106-I-1.

---

Decided: May 31, 2013

---

EVELYN M. STEPHENS., of Monroeville, Pennsylvania, pro se.

JOSEPH A. PIXLEY, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK T. MANHARDT, Assistant Director.

---

Before NEWMAN, CLEVENGER, and WALLACH, *Circuit Judges.*

PER CURIAM

Evelyn M. Stephens seeks review of the final decision of the Merit Systems Protection Board ("Board"), which affirmed the reconsideration decision of the Office of Personnel Management ("OPM") to reduce her Civil Service Retirement System ("CSRS") monthly annuity in order to provide a survivor annuity to her former husband. *Stephens v. Office of Personnel Management*, Docket No. PH-0831-12-0106-I-1 (Nov. 9, 2012). The former spouse, Henry L. Stephens, Jr., intervened in the proceedings before the Board. After Ms. Stephens's appeal to this court, on April 13, 2013, this court by Order notified Mr. Stephens of his right to intervene in this appeal, and gave him 30 days in which to do so. Mr. Stephens did not intervene. For the reasons set forth below, we *vacate and remand.*

I

Ms. Stephens divorced Mr. Stephens in July 1997 in the Court of Common Pleas, Family Division, in Allegheny County, Pennsylvania ("Court of Common Pleas"). On February 4, 2000, the former couple agreed to an equitable distribution of marital property, each by duly signing a Qualified Domestic Relations Order ("QDRO"). The Court of Common Pleas entered those orders. Pursuant to the QDROs, each spouse granted the other a portion of the retirement annuity each would enjoy upon retirement. Mr. Stephens has retirement annuity benefits pursuant to the Pennsylvania Public School Employees' Retirement System ("PSERS"), and Ms. Stephens has retirement annuity benefits under the CSRS. Ms. Stephens does not dispute Mr. Stephens's entitlement to the QDRO-agreed share of her CSRS retirement annuity, and there is no indication in the record that Mr. Stephens disputes Ms.

Stephens's entitlement to the QDRO-agreed share of his PSERS retirement annuity.

Upon her retirement from her position with the Internal Revenue Service, Ms. Stephens began to receive the share of her CSRS retirement annuity to which she had agreed in her QDRO. OPM interpreted the QDRO to also require Ms. Stephens to provide a CSRS survivor annuity to Mr. Stephens. Based on that interpretation, OPM began to, and presumably continues to, further reduce Ms. Stephens's monthly retirement annuity in order to fund the survivor annuity for Mr. Stephens.

## II

Ms. Stephens complained to OPM that it was improperly further reducing her retirement annuity to fund the survivor annuity for her former spouse. OPM rejected Ms. Stephens's complaint initially and upon reconsideration. Ms. Stephens appealed to the Board, where initially an Administrative Judge and later the full Board sustained OPM's rejection of Ms. Stephens's request to be free of reduction of her retirement annuity to fund a survivor annuity for her former spouse. OPM, the Administrative Judge, and the full Board interpreted the QDRO to require a survivor annuity for Mr. Stephens because Ms. Stephens's QDRO "nominated" Mr. Stephens "as beneficiary" for an amount of "death benefits payable by CSRS." Ms. Stephens's view, supported by a written opinion of her divorce counsel, is that this language was intended to provide any lump sum benefit payable upon death, not a survivor annuity. Ms. Stephens's view was further supported by PSERS's interpretation of Mr. Stephens's QDRO, which is identical in all material respects to Ms. Stephens's QDRO. PSERS interpreted the "nominated [Ms. Stephens] as beneficiary" for an amount of "death benefits payable by PSERS" language to relate only to any lump sum benefit payable upon death, not to a survivor annuity. Appearing before the Board, Mr. Ste-

phens asserted that under Ms. Stephens's QDRO, he is entitled to a survivor annuity from her, even though under his QDRO, she is not entitled to a survivor annuity from him. Notwithstanding the clear dispute between the parties as to what the QDROs were intended to accomplish, the Board sustained OPM's decision to compel Ms. Stephens to fund a survivor annuity for her former spouse. Ms. Stephens timely sought review of the Board's final decision in this court, and, as noted above, we duly advised Mr. Stephens of his right to intervene. He elected not to intervene, and consequently has waived his right to participate in this appeal.

III

We must affirm the Board's final decision unless we determine that it is arbitrary, capricious or not in accordance with law. 5 U.S.C. § 7703(c). An agency decision is not in accordance with law when the agency fails to abide by its regulations. As we shall demonstrate, the issue in this case is not whether OPM properly interpreted Ms. Stephens's QDRO: because Ms. Stephens's QDRO was not acceptable for processing by OPM in the first place, OPM should have rejected the QDRO without engaging in any interpretation of it.

In January 1992, OPM proposed extensive regulations to govern Court Orders Affecting Retirement Benefits (the three types of retirement benefits being employee annuities, refunds of employee contributions, and survivor annuities). *See* Court Orders Affecting Retirement Benefits, 57 Fed. Reg. 120 (proposed Jan. 2, 1992) (to be codified at 5 C.F.R. pt. 831 et al.). The proposed regulations defined as unprocessable by OPM all court orders labeled "qualified domestic relations order" or issued on ERISA forms. The reason for this proposed exclusion is that ERISA created the term QDRO to describe a court order that divides retirement benefits under ERISA plans. Those retirement benefits can differ from retirement

benefits under CSRS. As OPM explained in the final regulation, "[w]e decided to prohibit use of this label because we have seen from experience that attorneys prepare these orders on the assumption that they can provide any benefits under ERISA to CSRS . . . ." *See* Court Orders Affecting Retirement Benefits, 57 Fed. Reg. 33570, 33572 (July 29, 1992) (to be codified at 5 C.F.R. pt. 831, et al.).

OPM solicited comments on its proposed regulations, and one commentator objected to the blanket exclusion from processing of court orders labeled QDRO. OPM understood that property distribution decrees could involve both ERISA rights and CSRS rights, and sought a way to assure itself that it would be involved only distribution of CSRS rights, and that the state courts issuing property distribution decrees would understand the limits of OPM's authority. The final regulations struck a compromise: QDRO orders would not be deemed unprocessable if they met certain exact requirements. OPM explained:

> The proposed total ban on QDRO's is more severe than necessary to accomplish its purpose. We have revised sections 838.302 and 838.803 to relax the total ban on QDRO's to accept court orders labeled QDRO's if the court orders expressly state that they are written in conformity with our regulations. . . . Since we can guarantee that the purpose of the ban – that the court understands that we are exempt from ERISA and that the court is using the terminology as provided in the regulations – is satisfied by requiring that any QDRO mention our regulations, we will accept QDRO's that expressly acknowledge that they are written to conform with our regulation. In addition, we have added a model paragraph that could be used for this purpose.

> The requirement that a QDRO expressly state that it conforms with the regulations is necessary because even if the QDRO's terminology is acceptable, the court's intent may have been that the terms have different meanings than those assigned under these regulations. Abandoning the ban on QDRO's without requiring that QDRO's mention our regulations undermines the reasonableness of our assumption that the court is using our terminology, rather than ERISA terminology. That assumption is necessary for our actions to be ministerial, rather than having to interpret each court order.

57 Fed. Reg. at 33572.

The final regulations erect the strict requirements necessary for OPM to have the authority to process a QDRO in connection with distribution of CSRS retirement benefits. The regulations are the same today as when they became effective on August 28, 1992, and were effective on the date the QDROs in this case were entered by the Court of Common Pleas. 5 C.F.R. § 838.302 covers "Language not acceptable for processing" with regard to court orders affecting employee annuities. 5 C.F.R. § 838.803 covers "Language not acceptable for processing" with regard to court orders awarding former spouse survivor annuities. The language of the two regulations is the same:

> (a) Qualifying Domestic Relations Orders. (1) Any court order labeled as a "qualified domestic relations order" . . . is not a court order acceptable for processing unless the court order expressly states that the provisions of the court order concerning CSRS . . . benefits are governed by this part.
>
> (2) When a court order is required by paragraph (a)(1) of this section to state that the provisions of a court order concerning CSRS . . . benefits are

governed by this part the court order must expressly –

(i) Refer to part 838 of Title 5, Code of Federal Regulations, and

(ii) State that the provisions of the court order concerning CSRS . . . benefits are drafted in accordance with the terminology used in this part.

(3) Although any language satisfying the requirement of paragraph (a)(2) of this section is sufficient to prevent a court order from being unacceptable under paragraph (a)(1) of this section, OPM recommends the use of the language provided in ¶ 001 in Appendix A to subpart F of this section to state that the provisions of the court order concerning CSRS . . . benefits are governed by this part.

OPM's recommended language is as follows: "The court has considered the requirements and standard terminology provided in part 838 of Title 5, Code of Federal Regulations. The terminology used in the provisions of this order that concern benefits under the Civil Service Retirement System are governed by the standard conventions established in that part." 5 C.F.R. § 838app. A

IV

Ms. Stephens's Court of Common Pleas property distribution agreement is labeled "QUALIFIED DOMESTIC RELATIONS ORDER." In order to be processed by OPM, her QDRO must satisfy the requirements of 5 C.F.R. § 838.803.

Ms. Stephen's QDRO does not expressly refer to part 838 of Title 5, Code of Federal Regulations, and does not expressly state that the provisions of the court order concerning CSRS benefits are drafted in accordance with

the terminology used in Part 838.  The references in the QDRO to CSRS do not satisfy the requirements of § 838.803(a)(2), and nothing remotely resembling OPM's recommended language can be found in Ms. Stephens's QDRO.  In short, Ms. Stephens's QDRO does not qualify for processing by OPM.  OPM's conclusion that it could process the QDRO violated its own regulations and thus is not in accordance with law.  The Board's final decision perpetuated that legal error.

OPM's Federal Register notice in support of its final regulations noted that "[t]hese final regulations assure that the dispute-resolution role rests in the hands of the State courts as was originally intended by Congress." 57 Fed. Reg. at 33570.  Further, the notice states that "[t]he regulations are very detailed as to what constitutes a court order that is acceptable for processing" and "because the regulations prescribe in detail what is and is not acceptable for processing, OPM can now assume the appropriate role for itself, which is a ministerial role, rather  than a mediator in marital property disputes." *Id.* at 33570-71.  Importantly, the notice recognized that "[i]f a court order is so flawed that it is not sufficiently clear to satisfy our requirements, the appropriate action is for the parties to return to the State court to correct the problem." *Id.* at 33571.

V

OPM, the Administrative Judge, and the full Board overlooked the fact that Ms. Stephens's QDRO plainly does not qualify for processing by OPM, and hence overlooked the legal error committed by OPM.  The remedy for the error is for OPM to take corrective action to unwind its mistake.  The only dispute presented by Ms. Stephens is the reduction of her monthly retirement annuity to fund a survivor annuity for her former spouse.  Precisely how OPM and the parties, with further possible participation by the Court of Common Pleas, will unwind its error

is not for this court to dictate. The record is clear that there is room for doubt as to what the parties intended by the QDRO beyond the sharing of each other's retirement annuity and that OPM erred by interpreting the QDRO rather than instructing the parties to return to the Court of Common Pleas. By failing to enforce its own strict regulations, OPM fell into the interpretative morass which the regulations are designed to prevent. We presume that the true intent of the parties can be memorialized by mutual agreement in a QDRO that satisfies OPM's own strict requirements for processing.

The final decision of the Board is therefore vacated, and the case is remanded for corrective action by OPM.

**VACATED AND REMANDED**

COSTS

No costs.